**Commonwealth v. $7,848 U.S. Currency**

236

C.P. of Monroe County, No. 9416 CIVIL 2012

*Adrian Shcuka*, for Commonwealth.
*Robert A. Saurman*, for respondent.

HARLACHER SIBUM, *J.*, July 18, 2014—This matter is before the court on the Commonwealth's petition for forfeiture and condemnation filed on November 6, 2012. The currency seized amounted to $7,848.00. Of that amount,

$7,000.00 is claimed by Respondent Alexis George and $848.00 is claimed by Respondent Miguel Antonio Garayua. On November 8, 2012, this court issued a rule returnable upon respondents to show cause why the Commonwealth is not entitled to the requested relief. Respondents submitted separate answers on September 23, 2013. On November 18, 2013, the Commonwealth filed a motion for order of forfeiture, which the court denied without prejudice on November 19, 2013. Upon motion of the Commonwealth, a hearing was held on this matter on April 14, 2014. At hearing, the parties stipulated that the $848.00 claimed by Miguel Antonio Garayua was not subject to forfeiture and it was returned. The $7,000.00 remains at issue. We are now prepared to decide this matter.

This case arises from a traffic stop which occurred on May 9, 2012 on Interstate Route 80 in Tobyhanna Township. The affiant in this matter is Trooper Louis Rossi. Trooper Byron Dickson effectuated the stop for the stated cause of speeding. Alexis George was the driver of the vehicle with Miguel Garayua as the passenger. Respondent represented to the Trooper that he was headed to Wilkes-Barre to purchase a vehicle. George's vehicle had an empty car trailer attached to the back. Upon running Respondent George's license, Trooper Dickson established that it was suspended. The Trooper asked for consent to search the vehicle. Respondent George related that there was $7,000 U.S. currency in the center console of the vehicle and granted consent for the search. The money was wrapped in a paper bag with $1,000 increments separated by rubber bands. According to Respondent George, he earned this money doing oil changes as a side job in his local neighborhood in the Bronx, New York. Respondent George testified that the money went directly

from his customers, was set aside in his home, and then was placed in the car in anticipation of purchasing the vehicle. Respondent also testified that his neighborhood is laden with drug activity. Troopers effectuated a K-9 sniff at the scene of the stop, which rendered an alert to the presence of a controlled substance on the currency. No drugs or drug paraphernalia was present in the vehicle or on the respondents' persons.

The money was seized and an IONSCAN test was performed, resulting in positive presence of cocaine with casual contact levels of 805 and a cocaine high of 1057. As a frame of reference, this number is compared to the casual contact level of 425.5 for New York State levels measured from 2012. At hearing, Staff Sergeant Jenn Marsh testified as to the IONSCAN procedure, relating that the money was tested on June 26, 2012 in conditions which would eliminate or greatly reduce the possibility of contamination.

At hearing, it was also established that both respondents had criminal records for drug convictions. These convictions were roughly 20 years old and unrelated to one another.

## DISCUSSION

Pursuant to 42 Pa.C.S.A. §6801, et seq., currency may be seized if the Commonwealth shows that the currency was furnished or intended to be furnished in exchange for a controlled substance or that the currency was used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act." *See Commonwealth v. Three Hundred Ten Thousand Twenty Dollars*, 894 A.2d 154 (Pa.Cmwlth. 2006). "If the Commonwealth establishes a nexus, then the burden shifts

to the person opposing the forfeiture to prove that he or she owns the money; lawfully acquired the money; and did not use or possess the money for unlawful purposes." *Commonwealth v. $16,208.38 U.S. Currency Seized From Holt*, 635 A.2d 233, 238 (1993). "It is well accepted that each forfeiture case is sensitive to its own particular facts." *Commonwealth v. Burke*, 49 A.3d 543, 546 (Pa. Cmwlth. 2012) (internal citations omitted). "The proper inquiry requires weighing the totality of the circumstances presented without imposing artificial evidentiary requirements." *Id.* That is, "artificial bright-line standards are inappropriate for [this] analysis." *Id.*, at 550.

Under Pennsylvania forfeiture case law, the court must first determine whether the Commonwealth has established a nexus between the currency seized and unlawful activity by a preponderance of the evidence, in this case, we find that the Commonwealth has met its burden based on the following factors: (1) the positive alert by the drug-sniffing dog that controlled substances were present on the currency; (2) the results of the IONSCAN; (3) the manner of packaging of the currency which is consistent with drug trafficking; and (4) Respondents' prior drug conviction. As we find that these factors are sufficient to establish a nexus to illegal drug activity, the burden shifts to respondent to disprove the nexus and establish that he owns the money, that he lawfully acquired the money, and that he did not use or possess the money for unlawful purposes.

Upon consideration of whether respondent has met his burden, we remain cognizant that the courts decline to establish an "artificial bright-line standard" in determining forfeiture cases. As such, we thoughtfully considered the totality of the circumstances. First and foremost, respondent presented credible testimony which was

consistent with respondent's explanation at the time of the stop. That is, despite the drug-sniffing dog's alert and the IONSCAN results, we find that respondent's assertion of lawful acquisition, ownership, and use of the currency was logical and credible. Respondent told Troopers at the time of the stop and testified at the time of hearing that the money was proceeds from his lawful side-business changing oil for residents in his neighborhood in Bronx, New York, where drug activity is prevalent. We find this to be a credible and logical explanation for the lawful acquisition and ownership of the currency. Respondent further asserted that he was on his way to purchase a vehicle. We find this to be a credible and logical explanation for his lawful use of the currency. At hearing, respondent also highlighted several corroborating factors in support of his assertions which include: (1) that no drugs or drug paraphernalia were present in the vehicle; (2) that an empty trailer was attached to the back of the vehicle which was consistent with respondent's assertion that he was on his way to purchase a vehicle with the money; and (3) that respondent was transparent in his interactions with the Troopers at the time of the stop, granting consent for the search as well as his open acknowledgement to Troopers regarding the presence of the money. Furthermore, we find that respondents' unrelated drug convictions from 20 years ago are not indicative of an active drug lifestyle and, as our Supreme Court has previously noted, respondent's bundling of the money is equally consistent with persons attempting to simplify and promote precision in the management of their lawfully obtained funds. *See Commonwealth v. Marshall*, 698 A.2d 576, 579 (Pa. 1997). Thus, while we find the Commonwealth met its burden by presenting evidence associated with unlawful behavior, we also find that respondent met his burden with

evidence that is equally consistent with lawful behavior, thereby disproving an unlawful nexus.

As such, the following order shall be entered.

## ORDER

And now, this 18th day of July, 2014, after consideration of the Commonwealth's petition for forfeiture, and after hearing on this matter, the court finds that the respondent has met his burden under the forfeiture act in proving that the currency seized was lawfully acquired money and that respondent did not use or possess the money for unlawful purposes.

As such, it is ordered that Commonwealth's petition is denied.